UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 5:20-cr-00060-GFVT-MAS-1 |
| | ) | |
| V. | ) | |
| | ) | |
| JOHN WILLIAMS LAWSON, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |

*** *** *** ***

This matter is before the Court on the Report and Recommendation filed by United States Magistrate Judge Matthew A. Stinnett. [R. 31.] Defendant John Williams Lawson has been charged with violating 21 U.S.C. § 841(a)(1), possession with intent to distribute 500 grams or more of methamphetamine; 21 U.S.C. § 841(a)(1), possession with intent to distribute methamphetamine and heroin; 18 U.S.C. § 924(c)(1)(A), possession of firearm in furtherance of drug trafficking crime; and 18 U.S.C. § 922(g)(1), felon in possession of a firearm. [R. 1.] On August 28, 2020, Mr. Williams filed a motion to suppress evidence that was obtained during a traffic stop, and all evidence thereafter obtained, arguing that there was no reasonable suspicion justifying the initial traffic stop. [R. 21.] Judge Stinnett recommended that the Court deny Lawson's suppression motion, finding that the stop was based upon reasonable suspicion of criminal activity and therefore lawful. [R. 31.] On October 20, 2020, Defendant objected to the Recommended Disposition, arguing that the database registration check was not a reliable enough basis to justify a traffic stop.[1] [R. 38-1.] The Court will adopt Judge Stinnett's Report

---

[1] Under Rule 59(b) of the Federal Rules of Criminal Procedure, the Report and Recommendation advises the parties that objections must be filed within fourteen (14) days of service. *Id.* at 16; *see* 28 U.S.C. § 636(b)(1). Parties who fail to object to a magistrate judge's report and recommendation are barred from

and Recommendation [R. 31] for the reasons described below.

**I**

In the early morning hours of February 12, 2020, Richmond Police Officer Gerald Salyer conducted a registration check of Mr. Lawson's Chevrolet Suburban. [R. 21-1.] Officer Salyer accomplished this by inputting the Suburban's license plate information into multiple databases, including the Automated Vehicle Information System (AVIS), through a mobile data terminal (MDT) located inside his patrol car. [R. 31 at 2, 4.] Upon receiving a "Verify Proof of Insurance" readback from the AVIS database, Officer Salyer conducted a traffic stop of Mr. Lawson. [R. 21-1 at 2.] Officer Salyer requested that Mr. Lawson provide him with proof of insurance, which Mr. Lawson, despite searching through papers in his vehicle for approximately ten minutes, was unable to do. *Id.* While Mr. Lawson was searching for his proof of insurance, a canine unit arrived, comprised of Madison County Deputy Sheriff Jonathon Thompson and canine officer Kash. *Id.* at 2–3. Kash alerted the officers that he detected narcotics on both the driver's side door and the rear hatch of Mr. Lawson's Suburban. *Id.* at 3. Officer Salyer asked Mr. Lawson to step out of his vehicle, which Mr. Lawson refused to do at first, though he eventually complied and sat on the police cruiser while Officer Salyer, Officer Thompson, and other officers who had arrived on the scene searched his vehicle for approximately an hour. *Id.*

---

appealing a district court's order adopting that report and recommendation. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Here, no objections to Judge Stinnett's Report and Recommendation were filed within the appropriate time by either party. However, Defendant's Counsel had every intention of filing a timely objection and genuinely believed she had done so. Given the circumstances of Defense Counsel's filing error, the Court will deem her neglect excusable, will grant the Amended Motion for Leave to File Late Objection to Recommended Disposition [R. 38], and will consider Defendant's objection. Generally, this Court must make a *de novo* determination of those portions of the Report and Recommendation to which objections are made. 28 U.S.C. § 636(b)(1)(c). Therefore, the Court will make a *de novo* determination of Defendant's argument regarding the database's reliability in justifying a traffic stop.

In the Suburban, officers found approximately $24,000 in cash, a 100-gram weight, a loaded .40 caliber Smith & Wesson handgun, and two glass pipes. *Id.* at 4. The officers also searched Mr. Lawson's person and found $570 in cash, a single Lortab, a small plastic bag (possibly with drug residue), and several .40 caliber rounds. *Id.* Based upon the discovery of these items, Officer Salyer obtained a search warrant for the residence located at 4442 Hays Fork Lane in Richmond. *Id.* at 5. The search of the residence yielded a large amount of U.S. cash, an additional firearm, and further evidence of illicit drug-related activity. *Id.*

## II

Both parties agree that the dispositive issue here is whether Detective Salyer had a reasonable suspicion to stop Mr. Lawson based on an indication in the AVIS database that Mr. Lawson's vehicle insurance status should be verified. [R. 21-1 at 6; R. 31 at 6.] As explained below, the answer to this question is "yes."

### A

The Fourth Amendment provides "the right of people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated and no warrants shall issue but upon probable cause...." U.S. CONST. AMEND. IV. For Fourth Amendment purposes, a traffic stop "constitutes a seizure of persons." *Whren v. United States*, 517 U.S. 806, 809–10 (1996) (internal citations omitted). A law enforcement officer may initiate a traffic stop when he "possesses either probable cause of a civil infraction or reasonable suspicion of criminal activity." *United States v. Lyons*, 687 F.3d 754, 763 (6th Cir. 2012); *see also Terry v. Ohio*, 392 U.S. 1, 9 (1968). Reasonable suspicion is based on the totality of the circumstances and is present when a police officer has "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *U.S. v. Gross*, 662 F.3d 393, 399

3

(6th Cir. 2011) (quoting *U.S. v. Cortez*, 449 U.S. 411, 417–18 (1981)). The specific issue of whether a database notification that a vehicle's insurance status should be verified can constitute reasonable suspicion sufficient to support a vehicle stop has not been specifically addressed by the Sixth Circuit. However, other courts have considered the matter and provide persuasive authority that the answer hinges on the officer's familiarity with the database and the database's reliability.

For instance, the Fifth Circuit took up the issue of whether a state computer database indication of insurance status constituted reasonable suspicion when an officer is familiar with the database he is using and the system itself is reliable. *United States v. Broca-Martinez*, 855 F.3d 675, 680 (5th Cir. 2017). The court found that if an officer is familiar with the database and the system itself is reliable, "a seemingly inconclusive report such as 'unconfirmed' will be a specific and articulable fact that supports a traffic stop." *Id.* The court relied in part on reasoning from factually analogous cases from the Sixth, Seventh, and Eighth Circuits:

> Cases from the Seventh, Sixth, and Eighth Circuits confronting similar fact patterns are generally consistent with the reasoning in *Cortez-Galaviz* and *Esquivel-Rios*. *See Miranda-Sotolongo*, 827 F.3d at 671 (finding reasonable suspicion established when the database showed no vehicle registration record, "at least in the absence of evidence that [the officer] could not reasonably rely on the absence of a registration record to support an investigative stop"); *United States v. Sandridge*, 385 F.3d 1032, 1036 (6th Cir. 2004) (concluding there was reasonable suspicion for a stop when license plate check three weeks prior had indicated the driver was driving without a valid license); *United States v. Stephens*, 350 F.3d 778, 779 (8th Cir. 2003) (holding that when database check showed license plates were "not on file," there was reasonable suspicion to stop the vehicle).

*Id.* at 679–80.

The Tenth Circuit took up the issue of whether a traffic stop, which was derived from a computer system informing officers of the registration status of a license plate, was permissible.

*U.S. v. Cortez-Galaviz*, 495 F.3d 1203, 1204 (10th Cir. 2007). In that case, the court held that "a 'not found' report from the Utah state insurance database . . . suffices to afford a sufficiently particularized and objective basis to . . . support a brief traffic stop." *Id.* at 1211.[2] Federal district courts have also focused on officer familiarity with the database and database reliability in holding that officers may reasonably rely on database information to make a stop. *U.S. v. Hernandez-Velasco*, 2006 WL 2129468, at *4 (D. Utah July 28, 2006) ("[w]hile recognizing that computer information is not flawless, courts have routinely concluded that officers may reasonably rely on such information as justification for stopping a vehicle."); *see also United States v. Vela*, 2016 WL 305219, at *2 (S.D. Tex. Jan. 25, 2016) (holding that because in Officer DeLeon's five and a half years of police officer experience, an MDT check that returns an "unconfirmed" insurance status usually means that a vehicle is not insured as required by law, the database check on the defendant's car that returned an "unconfirmed" insurance status supplied the officer with a reasonable suspicion to justify the traffic stop); *U.S. v. Sanchez*, 2009 WL 3836398, at *8 (D. Kan. Nov. 16, 2009) (finding that so long as the state's system for maintaining and reporting temporary tag registrations "was not so frequently incorrect that a dispatch's report of tag not found would be inherently unreliable and an insufficient basis for finding reasonable suspicion," an officer's reliance on the database satisfied the

---

[2] A subsequent 10th Circuit case did clarify that a database system must be accurate and generally up to date in order to constitute a sufficient basis for a stop. *United States v. Esquivel-Rios*, 725 F.3d 1231, 1235 (10th Cir. 2013). In that case, the court found that a database that routinely yielded "no return" responses for temporary tags regardless of whether the vehicle was insured or not did not constitute a sufficient basis for a stop. *Id.* This is because such a situation "doesn't suggest criminal conduct but only some bureaucratic snafu." *Id.* Relying on this decision, the court in a case in New Mexico did suppress evidence when a police officer based his stop on a database that "rel[ied] on static, dated information" and was therefore inaccurate. *United States v. Beltran-Vivanco*, 2014 WL 12789017 at *8 (D.N.M., Aug. 13, 2014).

reasonable suspicion standard).

Kentucky law on the subject also hinges on database reliability. In a Kentucky court of appeals case on similar facts, the court remanded the case with the following instructions:

> [O]n remand, the trial court shall hear and consider further evidence concerning AVIS, including, but not limited to: what the various indications provided by AVIS mean, both in theory and in practice; whether the database's "match rate" can be definitively determined; and how (in)frequently an indication of "verify proof of insurance" indicates that a vehicle is uninsured.

*Willoughby v. Commonwealth*, 2014 WL 92253, at *6 (Ky. Ct. App. Jan. 10, 2014) (*Willoughby I*).

On remand, the court ultimately held that the officer in question "was entitled to rely on AVIS, which is based upon objective data collected by the Transportation Department." *Willoughby v. Commonwealth*, 2017 WL 1290645, at *5 (Ky. Ct. App. Apr. 7, 2017) (*Willoughby II*). The court found that "although AVIS does not guarantee that the verify proof of insurance indicator is conclusive in every case, it certainly provides an objective, articulable basis for suspecting that the vehicle may be uninsured." *Id.* (quotation marks omitted). In reaching this determination, the court cited to the officer's testimony that when a vehicle appears in the database as needing to verify proof of insurance, more often than not the vehicle is uninsured. *Id.*

### B

The inquiry here, therefore, is (1) whether Officer Salyer was sufficiently familiar with the database, and (2) whether the database is sufficiently reliable. The first issue of whether Officer Salyer was sufficiently familiar with the database is not in dispute, as Mr. Lawson agrees that Officer Salyer "demonstrated his familiarity with the database." [R. 38-1 at 1.]

On the second issue, however, Mr. Lawson disputes the reliability of the database in his

6

Objection to Recommended Disposition. [R. 38-1.] Mr. Lawson argues that he was insured on the date of the traffic stop, and the fact that he was insured is conclusive proof that the AVIS database is "by definition unreliable." [R. 38-1 at 2.] However, it is unclear whether Mr. Lawson was in fact insured when he was stopped by Officer Salyer. Mr. Lawson contends that he had a letter stating that his insurance premium was overdue and that if he did not pay the premium, he would lose his insurance. *Id.* Mr. Lawson contends that this letter proves that he had insurance on the night of the stop in question. *Id.* However, as Judge Stinnett identified, this letter actually raises more questions than it answers. It is not clear when Mr. Lawson's insurance payment was originally due, or when Nationwide, Mr. Lawson's insurer, initially considered the insurance to be "past due." It is also unclear whether the insurance could have lapsed due to lack of payment before the most recent AVIS database update. [R. 31.] Ultimately, the letter, as well as Mr. Lawson's insurance status, are not sufficient to diminish AVIS's general reliability.

The Court therefore agrees with Judge Stinnett's conclusion that the AVIS database is sufficiently reliable and is unpersuaded by Mr. Lawson's objection to the contrary. Officer Salyer testified that the AVIS database is "very reliable" and accurate "more often times than not." [R. 31 at 11.] The only AVIS inaccuracy that Officer Salyer identified was one in which drivers switched insurance coverage mid-month before the AVIS system was updated to include the change in insurance. *Id.* Officer Salyer's testimony was uncontroverted by Mr. Lawson. Furthermore, Mr. Lawson has not presented any evidence that the AVIS system is not generally reliable. Given the evidence presented regarding AVIS's general reliability, and the fact that Mr. Lawson's argument regarding the letter in his car raises more questions than it answers, the Court finds that Officer Salyer's AVIS database search and the subsequent "Verify Proof of Insurance" readback on Mr. Lawson's vehicle produced sufficient reasonable suspicion, thereby

7

justifying the stop.

### III

Accordingly, the court being duly and sufficiently advised, it is hereby **ORDERED** as follows:

1. Defendant's Motion for Leave to File Late Objection to Recommended Disposition **[R. 37]** is rendered **MOOT** by Defendant's Amended Motion for Leave to File Late Objection to Recommended Disposition [R. 38].

2. Defendant's Amended Motion for Leave to File Late Objection to Recommended Disposition **[R. 38]** is **GRANTED**.

3. The Report and Recommendation **[R. 31]** as to Defendant John William Lawson is **ADOPTED** as and for the Opinion of the Court;

4. Defendant John William Lawson's motion to suppress **[R. 21]** is hereby **DENIED**;

5. Judgment shall enter promptly.

This the 23rd day of October, 2020.



Gregory F. Van Tatenhove
United States District Judge