UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | Case No. 5:20-cr-00060-GFVT-MAS-1 |
| v. | ) | |
| JOHN WILLIAM LAWSON, | ) | **ORDER** |
| Defendant. | ) | |

*** *** *** ***

This matter is before the Court on the Report and Recommendation filed by United States Magistrate Judge Matthew A. Stinnett. [R. 68.] For the reasons that follow, Judge Stinnett's Report and Recommendation [R. 68] will be **ADOPTED**, Mr. Lawson's Objections will be **OVERRULED**, and Mr. Lawson's second Motion to Suppress [R. 60] will be **DENIED**.

**I**

Around 3:00 a.m. on February 12, 2020, Richmond Police Officer Gerald Salyer conducted a registration check of Mr. Lawson's Chevrolet Suburban. [R. 21-1.] Officer Salyer submitted the Suburban's license plate information into multiple databases, including the Automated Vehicle Information System (AVIS), through a mobile data terminal (MDT) located inside his patrol car. [R. 31 at 2, 4.] After receiving a "Verify Proof of Insurance" readback from the AVIS database, Officer Salyer conducted a traffic stop of Mr. Lawson. [R. 21-1 at 2.] Officer Salyer asked Mr. Lawson to provide him with proof of insurance, which Mr. Lawson, despite searching through papers in his vehicle for approximately ten minutes, was unable to provide. *Id.*

While Mr. Lawson was searching for his proof of insurance, a canine unit arrived,

comprised of Madison County Deputy Sheriff Jonathon Thompson and Canine Officer Kash. *Id.* at 2–3. Kash alerted the officers that he detected narcotics on both the driver's side door and the rear hatch of Mr. Lawson's Suburban. *Id.* at 3. Officer Salyer asked Mr. Lawson to step out of his vehicle, which Mr. Lawson refused to do at first, though he eventually complied and sat on the police cruiser while Officer Salyer, Officer Thompson, and other officers who had arrived on the scene searched his vehicle for approximately an hour. *Id.*

In the Suburban, officers found approximately $23,000 in cash, a 100-gram weight, a loaded .40 caliber Smith & Wesson handgun, and two glass pipes. *Id.* at 4. The officers also searched Mr. Lawson's person and found $570 in cash, a single Lortab, a small plastic bag (possibly with drug residue), and several .40 caliber rounds. *Id.*

Based upon the discovery of the items on Mr. Lawson and within the Suburban, Officer Salyer applied for a search warrant for the residence located at 4442 Hays Fork Lane in Richmond, Kentucky. *Id.* at 5. Officer Salyer requested to search "records, notes, writings, documents, recordings, safes, computers and cellular telephones" found at 4442 Hays Fork Lane because there was probable cause that such property constituted stolen or embezzled property, property used or intended to be used as a means of committing a crime, and/or property intended to be concealed or property that would tend to show that a crime had been committed. [R. 60-1 at 2, 4; R. 65-1 at 2, 4.]

To justify the warrant before a Madison District Court judge, Officer Salyer's sworn affidavit included the following: (1) the facts and circumstances of Mr. Lawson's traffic stop; (2) a water bill found in the vehicle addressed to 4442 Hays Fork Lane and the fact that the vehicle was registered to that address; (3) inconsistent statements Mr. Lawson made about the origin of currency on his person and in the Suburban; (4) the results of a criminal background check on

2

Mr. Lawson; (5) tips Officer Salyer had received relating to Mr. Lawson's reputation as a known drug dealer; and (6) Officer Salyer's training and experience working drug trafficking investigations. [R. 60-1; R. 65-1.]

Officer Salyer successfully obtained the search warrant, and on February 12, 2020, at approximately 12:46 p.m., Richmond Police Department officers and drug task force officers executed the warrant. [R. 65-1 at 8.] The officers seized the following items from the Hays Fork Lane residence: (1) paper ledgers and a blue notebook that contained written financial records; (2) a .22 caliber long rifle; and (3) a large sum of United States currency totaling approximately $50,000. *Id.*

Later in the afternoon on February 12, Detective Donovan Nolan of the Kentucky State Police sought a second search warrant for the 4442 Hays Fork Lane residence. [R. 65-2 at 1.] This warrant sought specifically to seize evidence that "would indicate the illegal use of, possession of, or trafficking in a controlled substance." *Id.* at 2. To establish probable cause, Officer Nolan's affidavit presented essentially identical information to Officer Salyer's affidavit, including facts surrounding the traffic stop and items found on Mr. Lawson and in the vehicle, general statements made by other officers and a tip concerning Mr. Lawson's transport of methamphetamine and storge of cash, guns, and drugs at his home, and Mr. Lawson's criminal history. *Id.* at 5–9. The affidavit also referenced the items that had been located during the first search. *Id.* at 7. A Madison District Court judge approved the second search warrant as sought based on the facts provided by Officer Nolan. *Id.* at 2.

The second search was executed at the 4442 Hays Fork Lane residence on February 12 in the afternoon and yielded the following items: (1) a bag with suspected Xanax pills; (2) five individual packages of suspected Xanax; (3) a large bag containing suspected methamphetamine;

3

(4) a money counter; (5) a loaded handgun; (6) an undisclosed amount of currency; and (7) a large digital scale. [*Id.* at 3; R. 60-4 at 1.]

Mr. Lawson was charged with violating 21 U.S.C. § 841(a)(1), possession with intent to distribute 500 grams or more of methamphetamine; 21 U.S.C. § 841(a)(1), possession with intent to distribute methamphetamine and heroin; 18 U.S.C. § 924(c)(1)(A), possession of firearm in furtherance of drug trafficking crime; and 18 U.S.C. § 922(g)(1), felon in possession of a firearm. [R. 1.]

On August 28, 2020, Mr. Lawson filed a motion to suppress evidence that was obtained during a traffic stop, and all evidence thereafter obtained, arguing that there was no reasonable suspicion justifying the initial traffic stop. [R. 21.] Judge Stinnett recommended that the Court deny Mr. Lawson's suppression motion, finding that the stop was based upon reasonable suspicion of criminal activity and therefore lawful. [R. 31.] On October 23, the Court adopted Judge Stinnett's Report and Recommendation and denied Mr. Lawson's suppression motion. [R. 40.] On October 23, Mr. Lawson filed a Motion for Rearraignment, which he withdrew on November 3, one day before the rearraignment was scheduled to occur. [R. 42; R. 44.]

On March 16, 2021, Mr. Lawson filed a Motion to Suppress all evidence uncovered during the February 12 residential searches, arguing that the alleged facts supporting the two search warrants of the 4442 Hays Fork Lane residence failed to "establish probable cause or a sufficient nexus between the alleged criminal activity and the home." [R. 60 at 5.] On April 27, Judge Stinnett recommended that Mr. Lawson's second suppression motion be denied because the warrant was supported by probable cause and the good faith exception also applies in this case. [R. 68.]

Under Federal Rule of Civil Procedure 72(b)(2), a petitioner has fourteen days after service to register any objections to the Recommended Disposition or else waive his rights to appeal. In order to receive de novo review by this Court, any objection to the recommended disposition must be specific. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). A specific objection must "explain and cite specific portions of the report which [defendant] deem[s] problematic." *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) (internal quotations and citations omitted). A general objection that fails to identify specific factual or legal issues from the recommendation, however, is not permitted, since it duplicates the Magistrate's efforts and wastes judicial economy. *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). On May 10, Mr. Lawson filed objections to Judge Stinnett's Report and Recommendation, and the matter is now ripe for review. [R. 70.]

## II

### A

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. As the Sixth Circuit has reaffirmed, "[p]robable cause supports a search warrant when the affidavit demonstrates 'a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Powell*, 847, F.3d 760, 769 (6th Cir. 2017) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). Further, the "review of the sufficiency of the evidence supporting probable cause is limited to the information presented in the four-corners of the affidavit[.]" *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005) (citations omitted); *United States v. Coffee*, 434 F.3d 887, 892 (6th Cir. 2006). "Nevertheless, when considering that information, we look to the totality of the

5

circumstances." *United States v. Dyer*, 580 F.3d 386, 390 (6th Cir. 2009) (citing *Gates*, 462 U.S. at 230).

To establish probable cause in the residential search warrant context, "the supporting affidavit must set forth 'a nexus between the place to be searched and the evidence sought.'" *United States v. Penney*, 576 F.3d 297, 311 (6th Cir. 2009) (quoting *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004)). "This belief that the items sought will be found at the location to be searched may be supported by less than prima facie proof but [requires] more than mere suspicion." *Id.* (internal quotation marks omitted).

However, if a reviewing court determines that an affidavit failed to establish probable cause, it should not apply the exclusionary rule and suppress the resulting evidence if it was "seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." *United States v. White*, 874 F.3d 490, 496 (6th Cir. 2017) (quoting *United States v. Leon*, 468 U.S. 897, 905 (1984)). "Following *Leon*, courts presented with a motion to suppress claiming a lack of probable cause must ask 'whether a reasonably well trained officer would have known that the search was illegal despite the'" issuing judge's decision. *Id.* (quoting *United States v. Hodson*, 543 F.3d 286, 293 (6th Cir. 2008)).

One circumstance requiring exclusion is when an affidavit is "bare-bones," or "is a conclusory affidavit" that only asserts "the affiant's belief that probable cause existed." *Id.* (quoting *United States v. Williams*, 224 F.3d 530, 533 (6th Cir. 2000)). However, an affidavit will not be considered to be bare bones if the following is true:

> [A]lthough falling short of the probable-cause standard, it contains a minimally sufficient nexus between the illegal activity and the place to be searched. If the reviewing court is able to identify in the averring officer's affidavit some connection, regardless of how remote it may have been—some modicum of evidence, however slight—between the criminal activity at issue and the place to

be searched, then the affidavit is not bare bones and official reliance on it is
reasonable.

*Id.* at 496–97 (internal quotation marks and citations omitted).

**B**

Mr. Lawson provides two arguments in his Second Motion to Suppress as to why the searches of the 4443 Hays Fork Lane residence should be suppressed: (1) a lack of probable cause; and (2) the lack of a sufficient nexus between the alleged criminal activity and the home. [R. 60 at 5.] Judge Stinnett thoughtfully considered each of these issues and determined that Mr. Lawson's Motion should be denied.

a

Mr. Lawson first argues that probable cause is lacking because some of the information contained in the affidavit is stale. Specifically, Mr. Lawson takes issue with statements made by (1) Madison County Sheriff's Office detectives that Mr. Lawson was known to transport methamphetamine and had drugs and cash stored at his residence, and (2) a tipster's statement to "MSO Deputy Quiles" providing similar information and stating that he had personally seen the money and the drugs at Mr. Lawson's residence. [R. 60 at 5–6.]

Judge Stinnett meticulously reviewed the record and determined that the officers' complaints and the tipster's statements were not stale. To determine whether information in a particular case is stale, the Court considers:

> (1) the character of the crime (chance encounter in the night or regenerating conspiracy?), (2) the criminal (nomadic or entrenched?), (3) the thing to be seized (perishable and easily transferrable or of enduring utility to its holder?), and (4) the place to be searched (mere criminal forum of convenience or secure operational base?).

*United States v. Elbe*, 774 F.3d 885, 890 (6th Cir. 2014) (quoting *United States v. Frechette*, 583

7

F.3d 374, 378 (6th Cir. 2009)). Judge Stinnett reviewed each factor, finding first that the totality of the circumstances demonstrated a current, ongoing narcotics trafficking operation. [R. 68 at 11.] Judge Stinnett further found that the second and fourth factors weighed against a staleness finding because the evidence indicated that Mr. Lawson was involved in a drug trafficking operation during the relevant timeframe and that both the water bill and vehicle registration demonstrated a connection between Mr. Lawson and the Hays Fork Lane residence.[1] Finally, Judge Stinnett found that the third factor weighed against a staleness finding because the warrant targeted nonperishable items, such as firearms and currency, that renders the age of a tipster's information less relevant. [R. 68 at 12 citing *United States v. Sinclair*, 631 F. App'x 344, 348 (6th Cir. 2015).]

Judge Stinnett also evaluated the specifics of the tipster's conversation with Deputy Quiles that was provided on October 21, 2019. [R. 68 at 12.] Judge Stinnett noted that the information was all relayed in the present tense and specified that the tipster "knows" Mr. Lawson, Mr. Lawson "lives" on Hays Fork Lane, Mr. Lawson "has" both methamphetamine and large sums of money at the Hays Fork Lane residence, Mr. Lawson "is" involved with other drug traffickers, and Mr. Lawson "goes" to other states to get drugs. *Id.* Ultimately, Judge Stinnett found that the information was not "categorically stale." *Id.* at 13. In his Objections to Judge Stinnett's Report and recommendation, Mr. Lawson does not contest, or even address, Judge Stinnett's staleness recommendation, and the Court therefore adopts Judge Stinnett's finding that the information was not stale.

---

[1] Judge Stinnett clarified in a footnote that although the water bill was not explicitly said to be "addressed to Lawson" and "the record related to the prior suppression effort revealed that the vehicle was not registered to Lawson," the current registration for the vehicle Mr. Lawson was driving and the utility bill combine to establish a "non-fleeting connection to the Hays Fork Lane residence." [R. 68 at 12.]

8

**b**

Next, Mr. Lawson argues that there was not probable cause for the first search of the Hays Fork Lane residence because Officer Salyer's supporting affidavit did not establish a sufficient nexus between the alleged criminal activity and the Hays Fork Lane residence. [R. 60 at 5.] Mr. Lawson further argues that because the second search warrant incorporated many of the same facts as the first and also relied partly upon evidence uncovered during the first Hays Fork Lane residence search, the results of the second search should likewise be suppressed. *Id.* at 6.

Judge Stinnett carefully analyzed the affidavit and found that a sufficient nexus existed between Mr. Lawson's ongoing drug activity and the Hays Fork Lane residence. [R. 68 at 14.] Judge Stinnett first addressed the tipster's evidence. Judge Stinnett found that the concrete facts provided by the tipster, while limited, did provide a "basis of firsthand knowledge" of money and drugs at the Hays Fork Lane home. *Id.* at 16. Next, Judge Stinnett turned to the officers' complaints, finding that "the information indicating Lawson's involvement with methamphetamine is consistent with Lawson's criminal history as provided in the affidavit" and could 'factor into the probable cause inquiry under a totality of the circumstances approach." *Id.* at 17.

Judge Stinnett then looked to the evidence found at the traffic stop in combination with Mr. Lawson's inconsistent explanations for the significant amount of cash in the vehicle and on his person to conclude that the evidence "fairly depicted Lawson as then engaged in ongoing, seemingly large-scale drug trafficking." *Id.* at 18. Judge Stinnett also noted that Officer Salyer's warrant was seeking "evidence tied to storage and concealment of proceeds" not drugs themselves, which ties more directly to the currency and firearm seized in Mr. Lawson's vehicle.

*Id.* at 19. Finally, Judge Stinnett noted that Officer Salyer's statements regarding his experience and training "offer additional links between the traffic stop and Lawson's residence." *Id.* at 19–20. After evaluating the four corners of Officer Salyer's affidavit in light of the totality of the circumstances, Judge Stinnett concluded that the information contained in the affidavit "established a sufficient nexus between Lawson's ongoing drug dealing and the documents, records, and other items believed to be present at the Hays Fork Lane residence." *Id.* at 20.

Mr. Lawson objects to Judge Stinnett's conclusion that the affidavit established a sufficient nexus between Mr. Lawson and the Hays Fork Lane residence. [R. 70.] Specifically, Mr. Lawson argues that the unknown tip from law enforcement is not reliable, that the confidential jailhouse informant tip was made four months prior to the traffic stop and was not corroborated, that probable cause was lacking regarding Mr. Lawson's involvement in ongoing criminal activity, and that the evidence tying Mr. Lawson to the Hays Fork Lane residence was insufficient.[2] *Id.* at 1–5.

The Sixth Circuit has held that "an affidavit that supplies little information concerning an informant's reliability may support a finding of probable cause, under the totality of the circumstances, if it includes sufficient corroborating information." *United States v. Woosley*, 361 F.3d 924, 927 (6th Cir. 2004) (citing *Illinois v. Gates*, 462 U.S. 213, 241–45 (1983)). Further, it is important to note that "[t]he affidavit is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." *Woosley*, 361 F.3d at 927

---

[2] Mr. Lawson raises the issue of the confidential jailhouse informant in his objection, once again arguing that because the tip was made four months prior to the traffic stop in question, it should not be considered. [R. 70 at 3–4.] However, as discussed above, Mr. Lawson failed to respond to, or even mention, Judge Stinnett's detailed analysis demonstrating that neither the officers' complaints nor the tipster's statements were stale. [R. 68 at 9–13.] Accordingly, the Court adopts Judge Stinnett's finding that the confidential jailhouse informant's statement was not stale.

(quoting *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000) (en banc)). Here, although Mr. Lawson is correct that the anonymous tips given to law enforcement on its own, and the confidential jailhouse informant's tip on its own, may not support a finding of probable cause, the tips corroborated each other in several important respects: (1) both mentioned that Mr. Lawson transported 15-pound quantities of methamphetamine; (2) both mentioned travel by Mr. Lawson from Kentucky to Atlanta to pick up drugs; (3) both mentioned Hays Fork Lane as Mr. Lawson's residence; and (4) both mentioned secret compartments within the Hays Fork Lane residence containing illicit items. [R. 65-1 at 5.]

Further, in addition to the informant's tip and the anonymous tips received by law enforcement, Officer Salyer also included in the affidavit the specific facts surrounding the traffic stop and Officer Salyer's own training and experience. [R. 68 at 17, 19.] Officer Salyer included the fact that in Mr. Lawson's vehicle and on his person the officers found a digital scale, a loaded handgun and ammunition, $500 of cash on Mr. Lawson and approximately $23,000 in manicured bundles in Mr. Lawson's vehicle, as well as drug paraphernalia and residue and a Lortab pill. [R. 65-1 at 4–5.]

Additionally, the affidavit mentioned Mr. Lawson's prior federal methamphetamine conviction and Mr. Lawson's changing answers to where the money in his vehicle originated. *Id.* at 5. The affidavit also pointed to the utility bill found in Mr. Lawson's vehicle addressed to the Hays Fork Lane residence and the fact that the vehicle Mr. Lawson was driving was registered to the Hays Fork Lane residence. *Id.* In addition to the circumstances surrounding the traffic stop, Officer Salyer also pointed to his own training and experience to determine that it was reasonable to believe that Mr. Lawson was involved in an ongoing drug distribution scheme. *Id.* at 5–8.

Mr. Lawson argues that the utility bill and vehicle registration do not demonstrate a sufficient nexus between Mr. Lawson and Hays Fork Lane. This is particularly true, Mr. Lawson argues, because he received a citation in 2019 and his address then was listed as 909 Georgetown Street and not Hays Fork Lane and that the vehicle in question was not registered to him. [R. 60-2; R. 70.] However, the totality of the circumstances demonstrate that Mr. Lawson's argument is without merit. First, Officer Salyer stated that the utility bill "belonged to Lawson." *Id.* This language can be fairly read to indicate that the bill was "addressed to" Mr. Lawson. Second, Mr. Lawson was stopped while driving a vehicle registered to the Hays Fork Lane residence. *Id.* Third, multiple outside sources separately identified the Hays Fork Lane residence as belonging to Mr. Lawson. *Id.* These factors combine to provide a sufficient nexus between Mr. Lawson and the Hays Fork Lane residence.

Ultimately, after evaluating the totality of the circumstances in this case in the context of the four corners of Officer Salyer's affidavit, the Court agrees with Judge Stinnett and finds that the information contained in the affidavit established a sufficient nexus between Mr. Lawson's ongoing drug activity and the documents, records, and other items believed to be within the Hays Fork Lane residence. Mr. Lawson does not raise any distinct suppression theory as to the second residential search warrant application, and the Court accordingly finds that a sufficient nexus was also established as to the second affidavit.

**C**

Judge Stinnett also found that even if the affidavit had failed to establish the requisite probable cause, it is clearly a situation in which the good faith exception applies. Mr. Lawson argues that Officer Salyer's affidavit was bare-bones and therefore falls outside of the good faith exception. [R. 66 at 5.] However, Judge Stinnett looked at the facts and to *United States v.*

12

*Reed*, 993 F.3d. 441, 444 (6th Cir. 2021), to determine that the good faith exception applies. [R. 68 at 21.] First, Judge Stinnett found that there was "probable cause to conclude generally that the defendant was engaged in recent, ongoing drug trafficking." *Id.* at 21–22.

Next, Judge Stinnett found that, similar to *Reed*, there was probable cause to suspect Mr. Lawson of being an ongoing drug trafficker and, thus there existed a sufficient nexus between evidence being sought and a search of the Hays Fork Lane residence. *Id.* at 22. Third, there existed in the affidavit references to Officer Salyer's training and experience to support his belief of what evidence may be found at the Hays Fork Lane residence. *Id.* Finally, Judge Stinnett found that given all of the evidence contained in the affidavit, this was not a case where the affidavit so "obviously" lacked in indicia of probable cause, particularly given the fact that the affidavit included (1) information about Mr. Lawson's criminal history and pending trafficking charges; (2) incriminating results of the traffic stop including Mr. Lawson's inconsistent testimony; (3) details tying Mr. Lawson to the Hays Fork Lane residence, including the vehicle registration and utility bill; and (4) details about Officer Salyer's training and experience and the specific facts at issue. *Id.* at 23.

Mr. Lawson objects to Judge Stinnett's conclusion, arguing that Judge Stinnett's reliance on *Reed* is misplaced. [R. 70 at 6.] Specifically, Mr. Lawson's counsel analyzed *Reed* to demonstrate that "there is nowhere close to this amount of evidence establishing that Mr. Lawson was a drug dealer or lived at the property within the search warrant affidavit." *Id.* at 7. Mr. Lawson also argues that Officer Salyer did not have as much "experience in drug trafficking arrests and investigations as seen in *Reed.*" *Id.* at 9.

However, *Reed* does not stand for the proposition that the exact amount of evidence or experience present in *Reed* must exist for the good faith exception to apply. Instead, *Reed* states

13

that "a minimally sufficient nexus [i]s one in which there is 'some connection, regardless of how remote it may have been—some modicum of evidence, however slight—between the criminal activity at issue and the place to be searched.'" 993 F.3d at 451 (quoting *United States v. McCoy*, 905 F.3d 409, 416 (6th Cir. 2018)). Here, given the amount of evidence provided in the affidavit as described above, the "modicum of evidence" threshold is met, and a reasonably well-trained officer would not have known the search was illegal despite the issuing judge's decision. *White*, 874 F.3d at 496. Accordingly, the Court overrules Mr. Lawson's objection and finds that the good faith exception applies.

### III

Accordingly, the court being duly and sufficiently advised, it is hereby **ORDERED** as follows:

1. The Report and Recommendation [**R. 68**] as to Defendant John William Lawson is **ADOPTED** as and for the Opinion of the Court;

2. Defendant John William Lawson's Objections to Judge Stinnett's Report and Recommendation **[R. 70]** are **OVERRULED**; and

3. Defendant John William Lawson's second motion to suppress **[R. 60]** is hereby **DENIED**.

This the 12th day of May, 2021.



Gregory F. Van Tatenhove
United States District Judge

14